IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-00409-MEH

TERRELL FREDERICK, individually and on behalf of LF, his minor child,

    Plaintiff,

v.

COFFEE HOUSE HOLDINGS, INC.,

    Defendant.

---

## ORDER ON MOTION TO DISMISS
---

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court is Defendant's Motion to Dismiss [filed April 7, 2017; ECF No. 20]. The motion is fully briefed and the Court concludes that oral argument (not requested by the parties) would not materially assist in its adjudication of the motion. For the reasons that follow, the Court denies the Defendant's motion in part and reserves judgment in part.[1]

## BACKGROUND

Plaintiff Terrell Frederick initiated this action against Defendant Coffee House Holdings, Inc., a wholly owned subsidiary of Starbucks Corporation, on February 15, 2017.

**I.    Statement of Facts**

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by the Plaintiff in the operative Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(1) pursuant to *Holt v. United States*, 46 F.3d 1000,

---

[1]On March 10, 2017, the parties consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c). ECF No. 13.

1002 (10th Cir. 1995).

Due to his or her disability, Plaintiff's minor child, LF, requires the use of a mobility service animal.

On or about December 8, 2016, Plaintiff and LF visited Defendant's place of public accommodation ("PPA") at 5805 Barnes Road, Colorado Springs, Colorado. Plaintiff and LF allege they were "prevented from the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of Defendant's PPA" because of Defendant's (1) failure to provide a ground surface that was stable, firm, and slip resistant; and (2) failure to provide doors with no greater than five pounds maximum opening force. Compl. ¶¶ 37-38.

## II. Procedural History

Based on these allegations, Plaintiff claims that Defendant violated Title III of the Americans with Disabilities Act ("ADA") and seeks declaratory and injunctive relief to remedy the alleged statutory violations. Compl. at 11-12.

In response, Defendant filed the present motion to dismiss the Complaint arguing Plaintiff failed to allege he reported the alleged violations to the Defendant or to the Colorado Civil Rights Division before filing suit and, thus, failed to comply with the ADA's notice and administrative exhaustion requirements. Although Defendant specifically argues, "the Court should dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(1) or 12(b)(6) for failure to exhaust administrative remedies," Defendant also notes, "the parties and this Court are now embroiled in costly litigation over claims that are moot" (Mot. 2) and attaches a copy of a "report" by Ryan Kelley, an ADA Compliance Consultant.

Plaintiff counters that a plain reading of the statute and the prevailing law demonstrate no

2

requirement to exhaust administrative remedies in Title III of the ADA and, to the extent the Court considers Defendant's extraneous evidence to determine whether Plaintiff's claim is moot, the motion should be converted to a motion for summary judgment.

Defendant replies that it "rests" on its arguments concerning the exhaustion requirement and contends that Plaintiff fails to "identify the evidence he needs to overcome Defendant's mootness argument." Reply 2.

## **LEGAL STANDARDS**

Without explanation, Defendant first cites to *both* Fed. R. Civ. P. 12(b)(1) and 12(b)(6) in support of its motion to dismiss; however, in its reply brief, Defendant confirms that it challenges this Court's jurisdiction over Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(1).[2]

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations

---

[2]In fact, both issues raised by Defendant challenge the Court's jurisdiction to hear the case. "The requirements of Section 2000a–3(c) are jurisdictional and, unless those requirements are met, the federal courts do not have jurisdiction to decide the dispute." *Stearns v. Baur's Opera House, Inc.*, 3 f.3d 1142, 1144 (7th Cir. 1993). In addition, "[t]he mootness doctrine provides that although there may be an actual and justiciable controversy at the time the litigation is commenced, once that controversy ceases to exist, the federal court must dismiss the action for want of jurisdiction." *Jordan v. Sosa*, 654 F.3d 1012, 1023 (10th Cir. 2011).

3

of fact in the complaint, without regard to mere [conclusory] allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso*, 495 F.2d at 909. Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear his claims.

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id.* at 1002-03 (citations omitted). The present motion launches both a facial attack on this Court's subject matter jurisdiction through Defendant's exhaustion challenge and a factual attack through its mootness argument. Therefore, the Court will accept the truthfulness of the Complaint's factual allegations for purposes of the exhaustion analysis, but will not presume the allegations' truthfulness for the mootness analysis.

## ANALYSIS

**I.     Exhaustion**

Defendant argues that Title III of the ADA incorporates the provision from Title II of the Civil Rights Act of 1964 requiring that a claimant exhaust state administrative remedies before

4

bringing a claim under the statute. The Tenth Circuit has not addressed this question, but some judges in this District agree. For the following reasons, this Court sides with the majority of courts, including two courts of appeals, finding that the statute does *not* require notice and/or exhaustion.

In this District, the Honorable John L. Kane permitted a plaintiff to file an amended complaint seeking injunctive relief under Title III of the ADA, but "reminded" the plaintiff of "the notice requirement" saying, "By making § 2000a–3 applicable to enforcement actions under 42 U.S.C. § 12188, Congress has imposed a state law exhaustion requirement on disabled individuals seeking to enforce their rights under Subchapter III of the ADA." *Howard v. Cherry Hills Cutters, Inc.*, 935 F. Supp. 1148, 1150 (D. Colo. 1996) ("*Howard I*"). The following year, Judge Kane affirmed this prior order by repeating the conclusion in *Howard I* and finding, "§ 2000a–3(c) required [plaintiff] to notify state authorities of the act or practices of which he was complaining at least 30 days before filing his Amended Complaint." *Howard v. Cherry Hills Cutters, Inc.*, 979 F. Supp. 1307, 1308-09 (D. Colo. 1997) ("*Howard II*"); *see also Jones v. Reg'l Transp. Dist.*, No. 10-cv-01535-BNB, 2010 WL 3341205, at *2 (D. Colo. Aug. 23, 2010) (same).

With all due respect to Senior Judge Kane, this Court agrees with Plaintiff, with another judge in this District, and with a majority of courts across the country finding that Title III of the ADA does not incorporate the notice requirement from Title II. As so cogently explained by the Honorable Alan B. Johnson in *Colo. Cross Disability Coal. v. Hermanson Family Ltd. P'ship*, No. 96-WY-2490-AJ, *et al.*, 1997 WL 33471624, at *2–*3 (D. Colo. Mar. 3, 1997):

> [Title III of the ADA,] 42 U.S.C. § 12188(a) provides, in part:
>
> > (a) In general
> >
> > (1) Availability of remedies and procedures

The remedies and procedures set forth in section 2000a–3(a) of this title are the remedies and procedures this subchapter provides to any person who is being subjected to discrimination on the basis of disability in violation of this subchapter or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of section 12183 of this title. Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions.

(2) Injunctive relief

In the case of violations of sections 12182(b)(2)(A)(iv) and section 12183(a) of this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this subchapter. Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this subchapter.

(b) Enforcement by Attorney General

\* \* \* \*

Clearly, this section adopts only portions of 2000a–3(a), rather than all of 42 U.S.C. § 2000a–3. This section adopts portions of the federal civil rights statutes that are to be considered in applying the ADA. Specifically,[Title VII of the Civil Rights Act,] 42 U.S.C. § 2000a–3, entitled civil actions for injunctive relief, provides:

(a) Persons aggrieved; intervention by Attorney General; legal representation; commencement of action without payment of fees, costs, or security

Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by section 2000a–2 of this title, a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order, may be instituted by the person aggrieved and, upon timely application, the court may, in its discretion, permit the Attorney General to intervene in such civil action if he certifies that the case is of general public importance. Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the civil action without the payment of fees, costs, or security.

(b) Attorney's fees; liability of United States for costs

6

> In any action commenced pursuant to this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, and the United States shall be liable for costs the same as a private person.
>
> (c) State or local enforcement proceedings; notification of State or local authority; stay of Federal proceedings
>
> In the case of an alleged act or practice prohibited by this subchapter which occurs in a State, or political subdivision of a State, which has a State or local law prohibiting such act or practice and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no civil action may be brought under subsection (a) of this section before the expiration of thirty days after written notice of such alleged act or practice has been given to the appropriate State or local authority by registered mail or in person, provided that the court may stay proceedings in such civil action pending the termination of State or local enforcement proceedings.
>
> * * * *
>
> The issue before the Court arises because some of the courts that have construed these sections have determined that the reference in 42 U.S.C. 12188 is to ***all*** of 42 U.S.C. § 2000a–3, rather than just 42 U.S.C. § 2000a–3(a). This is contrary to the express language in § 12188, which only adopts the remedies and procedures set out in 2000a–3(a).

*Hermanson*, 1997 WL 33471624, at *3–*4 (emphasis added). In light of the Tenth Circuit's admonition that, if statutory language is clear and unambiguous, the plain meaning of a statute controls,[3] this Court agrees with Judge Johnson's analysis and conclusion: Section 12188 incorporates *only* Section 2000a-3(a), not all of Section 2000a-3 including subsection (c).

Judge Johnson is not alone in his ruling; the majority of courts across the country addressing this issue have come to the same conclusion that Title III of the ADA does not incorporate the notice

---

[3]"If the terms of the statute are clear and unambiguous, the inquiry ends and we simply give effect to the plain language of the statute." *Toomer v. City Cab*, 443 F.3d 1191, 1194 (10th Cir. 2006) (interpreting a different provision of Title III of the ADA).

requirement of Title II of the Civil Rights Act. *See, e.g., Hermanson*, 1997 WL 33471624, at *3–*4; *Botosan v. Paul McNally Realty*, 216 F.3d 827, 831 (9th Cir. 2000) ("§ 12188(a)(1) does not implicitly incorporate § 2000a–3(c). A plaintiff in a private Title III action is not required to provide notice to any state or local agency as a prerequisite to filing suit.") (collecting cases); *Burkhart v. Widener Univ., Inc.*, 70 F. App'x 52, 54 (3d Cir. 2003) ("The District Court here adopted the same reasoning [in *Botosan*], and we will do so as well."); *Wyatt v. Liljenquist*, 96 F. Supp. 2d 1062, 1064 (C.D. Cal. 2000) ("By its express terms, the ADA adopts only Section 2000a–3(a), which says nothing about notice or exhaustion of remedies."); *Guzman v. Denny's Inc.*, 40 F. Supp. 2d 930, (S.D. Ohio 1999) ("To hold that the entirety of § 2000a–3 is adopted is to impermissibly render superfluous the explicit textual reference to § 2000a–3(a)."); *Walker v. Asmar Ctr., LLC*, No. 11-11745, 2011 WL 5822394, at *6 (E.D. Mich. Nov. 15, 2011) (agreeing with *Guzman* and finding plaintiff was not required to exhaust administrative remedies); *Hill v. Park*, No. Civ.A. 03-4677, 2004 WL 180044, at *3 (E.D. Pa. Jan. 27, 2004) ("Section 12188(a)(1) is clear and unambiguous, and this Court should give the statute its plain meaning."); *Disabled in Action of Metro. N.Y. v. Trump Int'l Hotel & Tower*, No. 01 Civ. 5518(MBM), 2003 WL 1751785, at *10 (S.D.N.Y. Apr. 2, 2003) ("Plaintiffs were not required to notify state or local authorities prior to filing this suit."); *Stan v. Wal-Mart Stores, Inc.*, 111 F. Supp. 2d 119, 123 (N.D.N.Y. 2000) ("Because § 2000a–3(c) contains the exhaustion requirement, but was not incorporated into the ADA, the ADA does not mandate exhaustion prior to commencing suit.").

The cases on which Defendant relies have simply concluded that Title III of the ADA incorporates Title II's exhaustion requirement without any meaningful analysis. *See Howard II*, 935 F. Supp. at 1150 ("By making § 2000a–3 applicable to enforcement actions under 42 U.S.C. §

12188, Congress has imposed a state law exhaustion requirement on disabled individuals seeking to enforce their rights under Subchapter III of the ADA."); *Howard I*, 935 F. Supp. at 1150 (same). In a later case, however, Judge Kane expands on his conclusion in *Howard II* saying,

> The plain language of 42 U.S.C. § 12188 compels the construction I applied in *Howard*. 42 U.S.C. § 12188 states, "the *remedies and procedures* set forth in section 204(a) of the Civil Rights Act of 1964 (42 U.S.C.2000a–3(a)) are the *remedies and procedures* of this title." (emphasis added). Section 2000a–3(a) sets forth the *remedies* and authorizes aggrieved parties to commence a civil action for injunctive relief. Section 2000a–3(c) sets forth the *procedure* for commencing a civil action and imposes a pre-suit notice requirement on claims for relief under § 2000a–3.
>
> If Congress intended only to incorporate the Civil Rights Act's remedies, and not procedures, it would have excluded the word "procedures" from 42 U.S.C. § 12188. Accordingly, § 2000a–3(a) is, in turn, limited by the notification requirement of § 2000a–3(c), which provides, in cases where state or local law also prohibit the discriminatory acts or practices alleged, that individuals provide written notice to the appropriate state or local authorities at least 20 days before filing suit in federal court.

*Lillard v. Sunflower Farmers Mkt.*, No. 12-cv-01497-JLK, 2012 WL 5936543, at *1 (D. Colo. Nov. 27, 2012) (citations omitted) (emphasis in original). This Court respectfully disagrees that Congress intended to incorporate the *remedies* of Section 2000a–3(a) and the *procedure* of Section 2000a–3(c) into Section 12188, since Section 2000a-3(a) itself contains "procedures" such as the intervention of the Attorney General, the appointment of an attorney for the complainant, and the commencement of the civil action without payment of fees or costs. In fact, Section 12188 specifically identifies "*[t]he remedies and procedures set forth in section 2000a–3(a)* of this title are the remedies and procedures this subchapter provides to any person who is being subjected to discrimination . . . ." 42 U.S.C. § 12188(a) (emphasis added).

In sum, this Court aligns with those courts finding that a Title III disability claimant need

9

not exhaust administrative remedies before filing a lawsuit.[4] As such, the Court will deny Defendant's motion to dismiss Plaintiff's Title III claim for failure to exhaust administrative remedies.

## II. Mootness

Federal courts have jurisdiction through Article III of the Constitution to adjudicate cases and controversies. U.S. Const. Art. III, § 2. cl. 1. Mootness is a threshold issue, because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction. *Beattie v. United States*, 949 F.2d 1092, 1093 (10th Cir. 1991).

"To qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Ariz.*, 520 U.S. 43, 67 (1997). "If, during the pendency of the case, circumstances change such that a plaintiff's legally cognizable interest in a case is extinguished, the case is moot, and dismissal may be required." *Kan. Judicial Review v. Stout*, 562 F.3d 1240, 1245 (10th Cir. 2009).

> This requirement exists at all stages of federal judicial proceedings, and it is therefore not enough that the dispute was alive when the suit was filed; the parties must continue to have a personal stake in the outcome. When a party seeks only equitable relief, past exposure to alleged illegal conduct does not establish a present live controversy if unaccompanied by any continuing present effects. In these

---

[4] Although not directly on point, the Court notes the Tenth Circuit has determined that Title II of the ADA governing "public services" contains no requirement to exhaust administrative remedies saying, ""[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Elwell v. Bd. of Regents of Univ. of Okla.*, 693 F.3d 1303, 1309 (10th Cir. 2012). In addition, while not directly addressing the issue here, other circuits have found Title III does not contain an administrative exhaustion requirement. *See, e.g., McInerney v. Rensselaer Polytechnic Inst.*, 505 F.3d 135, 138 (2d Cir. 2007) ("ADA Title III incorporates only § 2000a–3(a)."); *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 638 (4th Cir. 2016) (finding the plaintiff's Title III ADA claims were "not subject to the administrative exhaustion requirement").

10

circumstances, the party must "demonstrate a good chance of being likewise injured in the future." Consequently, we must look beyond the initial controversy and decide whether the present dispute is sufficiently immediate and real.

*McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996) (internal citations and quotations omitted).

Here, in addition to declaratory statements and an award of attorney's fees and costs, Plaintiff seeks the following relief:

> C. Irrespective of Defendant's "voluntary cessation," if applicable, a preliminary and permanent injunction requiring Defendant to remove all barriers so that Plaintiff and Plaintiff's minor child shall have the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of Defendant's PPA [place of public accommodation]; and
>
> D. An Order requiring Defendant to alter its PPA that is the subject of this Complaint to make the PPA accessible to and usable by individuals with disabilities to the full extent required by the ADA; . . .

Compl. 11-12. "Where a plaintiff requests equitable relief, a mere showing that he maintains a personal stake in the outcome of the controversy is insufficient. Rather, a plaintiff must additionally demonstrate 'an adequate basis for equitable relief'—that is, '[a] likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law.'" *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011) (citing *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)). "A claim for injunctive relief is moot 'absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again.'" *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). Moreover, a plaintiff's continued susceptibility to injury must be reasonably certain; a court will not entertain a claim for injunctive relief where the allegations are based on speculation and conjecture. *Id.*

In this case, the Court finds it is not at all clear in Defendant's motion that Defendant sought

dismissal of Plaintiff's claims based on mootness. Other than the single statement cited above and the attached ADA Compliance Consultant's report, the motion contains no other argument concerning whether Plaintiff's claim is moot based on the consultant's findings that the PPA is compliant in all respects alleged in the Complaint. *See* Mot., Exh. A. At the same time, Plaintiff is incorrect that a mootness challenge, including evidence outside of the pleadings, requires that the Court convert the motion to a motion for summary judgment and permit the Plaintiff to conduct discovery. *See Holt*, 46 F.3d at 1002 ("A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).").

Under these circumstances, and in the interest of justice and judicial efficiency, the Court will permit the Plaintiff to undertake the following limited discovery[5] and file a surreply addressed solely to arguments raised in Defendant's reply brief as to whether his claims are moot based on the compliance report: Plaintiff may take the deposition of the consultant, Mr. Kelley, and may propound no more than five interrogatories and two requests for production of documents to the Defendant based on the consultant's report. Plaintiff shall serve any written discovery on or before May 25, 2017; take the deposition of Mr. Kelley on or before June 15, 2017; and file the surreply on or before July 14, 2017.

In light of this order, the Court will reserve judgment as to whether Plaintiff's Title III claim for declaratory and injunctive relief has been rendered moot by Mr. Kelley's investigation and

---

[5] In the Tenth Circuit, either party should be allowed discovery regarding factual issues raised in a motion to dismiss for lack of jurisdiction. *Sizova v. Nat'l Inst. of Stds. & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002). It is an abuse of discretion to refuse such discovery "where pertinent facts bearing on the question of jurisdiction are controverted" or "where a more satisfactory showing of the facts is necessary." *Id.*

report.

## CONCLUSION

THEREFORE, for the foregoing reasons, the Court **denies in part** Defendant's Motion to Dismiss [filed April 7, 2017; ECF No. 20] as to the exhaustion challenge, but **reserves judgment** as to Defendant's mootness challenge to the Plaintiff's Title III claim.

DATED this 11th day of May, 2017, at Denver, Colorado.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge